UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NELSON GUTIERREZ,

Plaintiff,

v.

UNITED AIRLINES, INC.,

Defendant.

Case No.  14-cv-05355-JCS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT UNITED AIRLINES, INC.'S  MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Re: Dkt. No. 33

## I.     INTRODUCTION

Plaintiff Nelson Gutierrez, an employee of United Airlines, was placed on extended unpaid leave after he was injured in 2009 while working as an employee in a ramp services position.  As a result of his injuries, he was (and continues to be) unable to meet the physical requirements of his former position in ramp services.  Consequently, he has sought to return to work in a position that entails less stringent physical requirements.  He alleges that since he became disabled, United has failed to provide him with a reasonable accommodation so that he can return to work, and has failed to engage in a good-faith interactive process to accommodate his disability.  Gutierrez filed a complaint in San Francisco Superior Court asserting claims under California law, including alleged violations of the California Fair Housing and Employment Act ("FEHA"), California Government Code sections 12900 *et seq*.  Defendant United Airlines, Inc. ("United") removed the action to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  Currently before the Court is Defendant's Motion for Summary Judgment or in the Alternative, Partial Summary Judgment ("Motion").  A hearing on the Motion was held on Friday, February 12, 2016

United States District Court
Northern District of California

1    at 9:30 a.m.  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

2    ## II.    BACKGROUND

3    ### A.    Factual Background[2]

4    Nelson Gutierrez was hired by United on July 18, 1994 to work at the San Francisco

International Airport in a part-time ramp services position.  Plaintiff's Declaration in Support of

Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant United Airlines

Motion for Summary Judgment ("Gutierrez Decl.") ¶ 2;  Declaration of Kellee Allain in Support

of Defendant United Airlines, Inc.'s Motion for Summary Judgment or, in the Alternative, Partial

Summary Judgment ("Allain Decl.") ¶ 2; Declaration of Judy M. Iriye in Support of Defendant

United Airlines, Inc.'s Motion for Summary Judgment or, in the Alternative, Partial Summary

Judgment ("Iriye Motion Decl."), Ex. A (Gutierrez Depo.) at19.  He became a full-time employee

in ramp services in October 1995.  Gutierrez Decl. ¶ 2.  In the ramp services position, Gutierrez's

job was primarily to lift and move baggage and other cargo.  Gutierrez Decl. ¶ 2.  The job

requires, *inter alia*, an ability to lift objects weighing up to 70 pounds.  Gutierrez Decl. ¶ 8 (stating

that Plaintiff was asked to lift objects of up to 70 pounds for ramp services position); *see also* Iriye

Motion Decl., Ex. D (D001633) (United Job Description for "Hub Station Ramp" Position, dated

September 13, 2011, stating that the position required an ability to lift up to 99 pounds);

Declaration of John W. Alexander III in Support of Plaintiff's Memorandum of Points and

Authorities in Opposition to Defendant United Airlines Motion for Summary Judgment

("Alexander Decl.") ¶ 2 (stating that it was his understanding that the ramp services position

required an ability to lift 75 pounds).[3]

According to his resume, between January 1999 and March 2000, Gutierrez worked for

DHL as a Plane Tech/Line Maintenance.  Gutierrez Decl., Ex. H (D000060) (resume submitted by

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] Unless otherwise stated, the facts below are undisputed.

[3] The discrepancy as to the exact number of pounds  an employee must be able to lift to hold Plaintiff's former position in ramp services (whether 70, 75 or 99 pounds) has no bearing on the instant motion as it is undisputed that at no time since his injury has Plaintiff been able to lift more than 50 pounds.  Gutierrez Decl., Ex. E (Temporary Partial Disability form dated July 17, 2013 reflecting ability to lift up to 50 pounds).

United States District Court
Northern District of California

Nelson Gutierrez).

In March 2000, Gutierrez was transferred to the Maintenance Department at United to work as an aircraft mechanic, but he returned to his ramp services position in September 2000, before the 180-day probation period for the position had ended.  Allain Decl. ¶ 2;  Iriye Motion Decl., Ex. A (Gutierrez Depo.) at 51, 56; Gutierrez Decl. ¶ 4.[4]  Gutierrez contends he was returned to his ramp services position because of "false allegations" about his performance.  Gutierrez Decl. ¶ 4.  United offers no evidence as to the reasons for Gutierrez's transfer back to ramp services.

In the Fall of 2005, Gutierrez was accepted to UC Berkeley and he attended school part time until the Spring of 2010, when he completed his studies.  Gutierrez Decl. ¶ 6.

On January 14, 2009, Gutierrez was injured while on the job, resulting in severe injuries to his hip, back, foot and shoulder.  Gutierrez Decl. ¶ 7.  As a result of his injuries, Gutierrez could not bend or stoop, twist, push or pull, squat, kneel, crawl or climb and could not lift more than 10 pounds.  Iriye Motion Decl., Ex. D (D000930) (Temporary Disability Form, dated October 5, 2009).

In October 2009, Gutierrez received a call from Patricia DeVere, described by United as a "United Business Office Representative," about a job in the bag room.  Iriye Motion Decl., Ex. A (Gutierrez Depo.) at 124.  According to Gutierrez, he was told, "give it a try and see if it would be okay, if you can do it.  And [he] tried.  And [he] was sent home."  *Id*.  In his declaration, Gutierrez states that the job involved "work[ing] with bags on belt 4 in the bag room."  Gutierrez Decl. ¶ 9.  According to Gutierrez, the job "required physical work of pulling, turning, lifting and flipping bags in order to know their destination of record."[5] *Id*.  Gutierrez states that when his supervisor

---

[4] United states in its brief that it "promoted" Gutierrez to this position.  Motion at 3.  However, the declaration of Kellee Allain that it cites in support of this statement states only that Gutierrez was "transferred" to the mechanic's position.  Allain Decl. ¶ 2.  The question of whether the transfer was a promotion is in dispute.

[5] United has offered a series of emails that are apparently between United employees stating that Gutierrez had been cleared to return to work "as Light Duty."  Iriye Decl., Ex. D (D000508).  The emails do not address the physical requirements of the job Gutierrez was to work in the bag room.  Nor has United offered any other evidence about the requirements of this job.

asked him how he was feeling, Gutierrez told him he "wasn't feeling well" and his supervisor told him to go home.  *Id.*  Gutierrez testified that he was not asked to return to that job and he did not ask to continue in that position.  Iriye Motion Decl., Ex. A (Gutierrez Depo.) at 125.

On November 6, 2009, United sent Gutierrez a letter with the subject line "Reasonable Accommodation Process (RAP)," hereinafter, "the November 6, 2009 RAP Letter."  The letter describes United's RAP program as a process "involv[ing] your Local Management, HR/LR Representatives and when appropriate a Worker Compensation Staff Representative working together with you to identify accommodations."  Gutierrez Decl., Ex. Y.  The letter instructed Gutierrez to contact the Employee Service Center to confirm his interest in participating in the program; upon confirming his interest, the letter said, an "Assessment of Functional Capabilities (AFC)" would be completed by United and a "Reasonable Accommodation Process session [would] be scheduled to review possible options." *Id.*[6]

In November 2009 and January 2010, Gutierrez was evaluated by Agreed Medical Evaluators Drs. Stark and La Rouge, who diagnosed his injury as arthritic.  Gutierrez Decl. ¶ 10. According to Gutierrez, he needed to see a specialist who was familiar with femoral acetabular surgery and requested help from DeVere in getting authorization for payment of such a specialist. *Id.* ¶ 10.  DeVere, in turn, recommended that Gutierrez speak with United's Worker's Compensation Manager, Dennis Aday.  *Id.*

---

[6] In its brief, United states: "[a]t the time of this letter, Gutierrez was not interested in returning to work.  (Gutierrez Depo., 130: 3-8)  During this time, Gutierrez testified he attended UC Berkeley to study for a degree in psychology, on a part-time basis, in 2009 and 2010 (Gutierrez Depo., 17: 9-24)."  Motion at 5. This artfully spliced together testimony is obviously intended to give the impression that Gutierrez testified that he did not want to return to work in the Fall of 2009 and in early 2010 because he was completing his degree at UC Berkeley.  That impression is false and mischaracterizes the actual record.  In the first deposition excerpt cited by United, Gutierrez was asked, "[a]nd I take it in November of 2009 you weren't interested in going back to work because *you were in a lot of pain and had a lot of restrictions,* is that right?"  Iriye Motion Decl., Ex. A (Gutierrez Depo.) at 130 (emphasis added).  Gutierrez responded, "I was doing the – I was doing the AME and getting evaluations, yeah, I had some discomfort."  *Id.*  Much earlier in the deposition, Gutierrez had testified that he attended UC Berkeley part-time between 2005 and 2010 (and not only in 2009 and 2010, as United implies).  *Id.* at 17.  Not only did Gutierrez never offer any testimony that he did not wish to return to work in 2009 and 2010 because he was attending school at that time; even the timing points away from such an inference, given that Gutierrez had been attending school part-time for *four years* prior to his injury.

4

United States District Court
Northern District of California

According to Gutierrez, he called Aday to explain his situation and to get approval for his consultation and surgery costs with Dr. Sampson, a hip specialist. *Id.*; *see also* Iriye Motion Decl., Ex. F (Plaintiff's Response to Defendant's Special Interrogatories, Set One) at 13 (stating that Gutierrez had this conversation with Aday in March 2010). Gutierrez says he told Aday about his work experience with United, including his work as a mechanic, and that his mechanic's license was still valid. Gutierrez Decl. ¶ 10. Gutierrez further states that Aday told him his "injury was serious" and that the ramp services position was "too grueling" for him. *Id.* According to Gutierrez, Aday told him about United's Reasonable Accommodation Process ("RAP") and recommended that he apply for an aircraft mechanic position because he was "qualified and the work was much less physically demanding." *Id.* ¶ 11. Aday also told Gutierrez that United could "accommodate [Gutierrez] in the Mechanic position by assigning [him] to bench work," Gutierrez states. *Id.* Gutierrez further states in his declaration that he told Aday he was interested in a mechanic position and that Aday told him that he would "tell United management at SFO" about Gutierrez's interest.[7] *Id.*

Gutierrez states that after his conversation with Aday, he called the Employee Service Center and told the United employee with whom he spoke that he was interested in participating in the RAP program. *Id.* ¶ 11; *see also* Iriye Motion Decl., Ex. A (Gutierrez Depo.) at 131, 133. Gutierrez says that he asked if the RAP program permitted an individual to apply for a different job classification and was told that a participant could apply for any job so long as he or she had

---

[7] United asserts a variety of evidentiary objections to the statements in the Gutierrez Declaration regarding his conversation with Aday, all challenging the admissibility of the statements allegedly made by Aday relating to the possibility that United could accommodate Gutierrez by moving him to a mechanic's position to the extent offered to establish the truth of those statements. *See* Reply at 3 n. 2. The Court, however, does not rely on the alleged statements of Aday for their truth, ie., that Gutierrez was *actually* qualified to work as a mechanic and that United could, *in fact*, have offered him such a position. Rather, it considers the statements by Gutierrez about his conversations with Aday only to the extent they reflect that he had conversations with Aday on this topic and that this is what he *understood* Aday to be telling him. Despite the long list of objections, United has not challenged Gutierrez's representation that he spoke with Aday in early 2010. Nor has it offered any evidence that Gutierrez's characterization of his conversation with Aday is inaccurate. Aday himself testified only that he does not recall speaking with Gutierrez, citing the fact that as a Worker's Compensation liaison for United he had a caseload of over 1400 people who had been injured on the job. Bacon Decl., Ex. D (Aday Depo.) at 28-30. Accordingly, the Court overrules United's objections to paragraph 11 of the Gutierrez Declaration.

United States District Court
Northern District of California

1  the qualifications for that job.  *Id*.  According to Gutierrez, during the telephone conversation he

2  provided the employee with his file number, full name, department and station where he worked.[8]

3  Gutierrez Decl. ¶ 11.

4       Gutierrez states that in February 2010 he submitted an application and a resume for an

5  aircraft mechanic position listed on United's website, using the Taleo system, "as [he] was

6  instructed by Aday."  *Id*. ¶ 12.  A print-out of what Gutierrez contends was his application for this

7  position is attached to the Gutierrez Declaration.  Gutierrez Decl., Ex. B.  It reflects a "Creation

8  Date" of February 9, 2010 and carries the header, "Candidate Name Gutierrez, Nelson A.

9  (30896262)."  It includes a "Cover Letter" in which Gutierrez states that he is "interested in the

10  Aircraft mechanic, Tech Opps. position on United Airlines Flying together, skynet, under carrier

11  services and opportunity."  *Id*.  In the resume section, Gutierrez listed his ramp services job as

12  11/94 to the present, as well as his Aircraft Mechanic position with United, between 3/2000 and

13  9/2000, and his experience as a Plane Tech with DHL, working Line Maintenance, for the period

14  1/1999 – 3/2000.  *Id*.[9]

15       According to Gutierrez, between July and September 2010, having waited several months

16  without receiving a response from management about participating in the RAP program or his

17  interest in a mechanic position, Gutierrez called the Employee Service Center and Aday again.

18  Gutierrez Decl. ¶ 13.  He says that he called Aday again a month or two later when he still had not

19  received a response from management.  *Id*.  In the meantime, United sent Gutierrez two more

20  letters, dated November 1 and 3, 2010, that were identical to the November 6, 2009 RAP Letter.

21  ───────────────

22  [8] There are discrepancies in the evidence in the record regarding when Gutierrez spoke with Aday
    about the RAP program.  In his declaration, Gutierrez indicates that he spoke with Aday prior to

23  February 2010, when he applied online for a mechanic's position (discussed further below), as
    "instructed by Aday."  Gutierrez Declaration, ¶ 12.  In his interrogatory responses, however, he

24  stated that Patricia DeVere did not refer Plaintiff to Aday (or provide Aday's contact information)
    until March 2010, that is, after Gutierrez says he followed Aday's instructions in applying for a

25  mechanic's position.  *See* Iriye Motion Decl., Ex. F (Plaintiff's Response to Defendant's Special
    Interrogatories, Set One) at 13.

26  [9] United contends the document provided is merely a "General Profile" and not an application,
    pointing out that later applications submitted to United through the online system carrier a

27  different header that specifically states "Gutierrez, Nelson A. (3089626) applied for a job" and
    identifies the specific position.  *See* Reply at 2;  Gutierrez Decl., Exs. H, I, O & P (subsequent

28  applications).  According to United, "[t]here is no evidence that there was an available mechanics
    position" or that "Gutierrez applied for a mechanics position in February 2010."  Reply at 2.

*See* Iriye Motion Decl., Ex. D (D00443-44).  Like the previous letter, these letters stated that Gutierrez should call the Employee Service Center "upon receipt."  *Id*.  Gutierrez testified that he did not call the Employee Service Center on the day he received these letters because he had already called the Employee Service Center to confirm his interest in participating in the RAP program.  Iriye Motion Decl., Ex. A (Gutierrez Depo.) at 130.

In August 2010, Gutierrez was placed on Extended Illness Status ("EIS"), pursuant to the collective bargaining agreement between United and Gutierrez's union, the International Association of Machinists and Aerospace Workers.   Iriye Motion Decl., Ex. A (Gutierrez Depo.) at 42; Ex. D (D001544-45) (relevant provision of collective bargaining agreement, stating that an employee who has used up his or her sick leave "shall be placed on extended illness status up to a maximum of three (3) years").[10]

On January 14, 2011, Gutierrez spoke with Aday about getting his hip surgery approved by United's worker's compensation adjuster.  Iriye Motion Decl., Ex. F (Plaintiff's Response to Defendant's Special Interrogatories, Set One) at 14.  The surgery was approved in July 2011.  *Id*. at 15.

On March 1, 2011, United sent Gutierrez another letter about the RAP program that was identical to the previous letters.  Iriye Motion Decl., Ex. E (000128).  Again, Gutierrez testified that he did not call the Employee Service Center on the day he received that letter because he had already done so.  Iriye Motion Decl., Ex. A (Gutierrez Depo.) at 133.  He further testified that he called the Employee Service Center later "for an update" as to his previous inquiry about participating in the RAP program and that he also contacted Aday to ask why he had not heard back from management.  *Id*. at 133-135.

In June 2013, United extended Gutierrez's EIS through November 2013.  Iriye Motion Decl., Ex. B (Cheeseman Depo.) at 160.  A new collective bargaining agreement came into effect

---

[10] Although the Motion states that Gutierrez went on EIS in August of 2010, the evidence cited by United does not address when in 2010 Gutierrez was placed on EIS.  Because Plaintiff did not challenge United's statement that Gutierrez was placed on EIS in the month of August, the Court takes it as undisputed.  The parties offer no explanation as to why more than a year passed after Gutierrez was injured before he was placed on EIS, even though it appears to be undisputed that other than the single shift in the bag room in October 2009, Gutierrez did not return to work.

United States District Court
Northern District of California

on November 1, 2013 and the EIS period under that agreement was increased from three years to six years. As a result, Gutierrez's EIS is now set to expire in the Fall of 2016. *Id*.

On June 4, 2013, Patricia DeVere, on behalf of United, sent Gutierrez a letter informing him that the results of his "Assessment of Functional Capabilities (AFC) or Employee Status Form (ESF) evaluation" had been received and that United had determined Gutierrez had "long-term functional limitations." Iriye Motion Decl., Ex. D (D000134). The letter stated, "[w]e would like to meet with you to review the results of your evaluation and to discuss possible accommodation options." *Id*. It further stated, "[w]e would like to extend to you the opportunity to utilize our Reasonable Accommodation Process (RAP)" and explained that "[t]his process involves your local management team and Human Resources working together to identify accommodation options." *Id*.

DeVere testified at her deposition that the purpose of RAP is to bring together the "appropriate parties," including the employee, a representative of Human Resources, and others such as union representatives or Workers' Compensation staff representatives, to have an "interactive dialogue" about possible accommodations, and in particular, to give the employee the "tools" needed to apply for another position using United's online system. *See* Iriye Motion Decl., Ex. C (DeVere Depo.) at 25, 65; Gutierrez Decl., Ex. D (brochure for RAP participants describing how to use United's "Skynet" to find job openings and submit online applications). She testified that her particular role was to "facilitate him and give him the information that [she had], which is to tell him how to go about applying for a job." Iriye Motion Decl., Ex. C (DeVere Depo.) at 132. In this role, she testified, she would "try to assist him . . . within the process of trying to apply online," such as helping him with his resume or if he had "any difficulties with the computer." *Id*.

According to Ana Maria Pena, who is a Recruiter in Talent Acquisitions at United, United's policy as to an employee who seeks to "move to an open position through the internal posting process as a reasonable accommodation" is that the employee "is awarded the open position as long as (1) it is at least a lateral move (as opposed to a promotion) and (2) the employee is minimally qualified for the position." Declaration of Ana Maria Pena in Support of

8

United States District Court
Northern District of California

Defendant United Airlines,  Inc.'s Motion for Summary Judgment or, in the Alternative, Partial

Summary Judgment ("Pena Decl.") ¶ 3.  Another individual who participated in the RAP process

on behalf of United, John Cheeseman, a Human Resources representative, testified that this was a

"new" policy, adopted in the "latter part of 2013."  Declaration of Daniel Ray Bacon in Support of

Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Bacon

Decl.), Ex. A (Cheeseman depo.) at 34, 36.

Cheeseman explained that under the current policy, "once we go through the RAP process

and the employee applies for a position, if the employee has the minimum . . . qualifications for

that position they are given the position." *Id*. at 34.  He testified that as to Gutierrez the process

worked as follows:

> the way the process works would be Nelson would apply for a
> position.  In this case if we're talking about maintenance, and then
> the maintenance team would take over.  In the record there would be
> a notation in Mr. Nelson's [sic] profile indicating that he needs an
> accommodation.  So the hiring department would take that up.  And
> their HR team would pursue that, relative to RAP'ing him again,
> maybe or something of that nature. . . .So they may set up another
> RAP session in that new work group or department.

*Id*. at 48-49.  In contrast, under the old policy, Cheeseman testified, an employee seeking

accommodation had to compete for the position with all the other candidates and the hiring

manager could select another candidate over the employee seeking accommodation even if the

candidate was qualified.  *Id*. at 36.

The first RAP meeting was held on June 19, 2013.  Gutierrez Decl. pp 15;  Iriye Motion

Decl., Ex. D (D000129-30).  Gutierrez attended with his union representative, John Alexander.

Gutierrez Decl. ¶ 15.  Patricia DeVere and Michael Cheeseman, a United Human Resources

representative, also attended.  *Id*.  Gutierrez presented a letter to DeVere and Cheeseman at the

June 19 meeting formally requesting a reasonable accommodation and specifically stating that

because he was limited in his ability to perform his ramp services position, he was "seeking

accommodation to a different job classification, aircraft mechanic."  Gutierrez Decl., Ex. C.  He

further wrote:

> I'm certified in airframe and powerplant and have experience, line
> maintenance DHL and composite for United Airlines SFOLX.
> From  my  experience,  I  know  I  can  physically  perform  aircraft

> mechanic job duties, and would therefore be sufficient accommodation. I would also be willing to meet with you to discuss other options.

*Id*. He went on to note:

> I contacted United Airlines Employee Service Center and Mr. Aday about the opportunity to utilize RAP program. But no supervisor, manager no one contacted me until now. I phone Mr. Aday couple months back regarding why the delay and lack response he assured me he communicated my interest to Patricia DeVere.

*Id*.

DeVere and Cheeseman responded to Gutierrez's request for accommodation as a mechanic by telling him that such positions required an ability to lift 50 pounds, which exceeded Gutierrez's lifting limitation. Iriye Motion Decl., Ex. D (D000129) (June 19, 2013 letter from Patricia DeVere summarizing meeting), D000119 (Partial Disability Form dated June 12, 2013 showing Gutierrez was limited to lifting 20 pounds); Gutierrez Decl. ¶ 15. Gutierrez told DeVere and Cheeseman that he believed he could meet this requirement because of the rehabilitation work he had been doing and that he would ask his doctor to update his restrictions. *Id*. DeVere and Cheeseman agreed to reconvene after Gutierrez obtained the updated information from his doctor. *Id*.; Iriye Motion Decl., Ex. D (D000129). It is undisputed that neither DeVere nor Cheeseman made any express promise that United would offer Gutierrez a position as a mechanic to accommodate his disability but that neither told him that his qualifications and experience precluded that possibility.

On July 22, 2013, Gutierrez met again with DeVere and provided her with a revised doctor's report reflecting that Gutierrez could lift up to 50 pounds and that some of the other physical restrictions had been removed. Iriye Motion Decl., Ex. D (D0001390) (new Partial Disability Form dated July 17, 2013), (D000141) (letter dated "July 22, 2013 & August 7, 2013" from DeVere summarizing RAP meetings on those dates). In that meeting, and a subsequent RAP meeting on August 7, 2013, the process of finding an accommodation outside of Gutierrez's current job classification was discussed. *Id*. DeVere demonstrated to Gutierrez how to log in to United's online job site at this meeting. Iriye Motion Decl., Ex. A (Gutierrrez Depo.) at 162. DeVere also informed Gutierrez that his EIS had been extended 90 days, to November 1, 2013 and

1 "stress[ed] the importance of reviewing all job postings, in case no posting for a mechanic position

2 became available, as 90 days passes quickly, and you would be separated at that time if you have

3 been unable to secure a position elsewhere." *Id.*, Ex. D (000141).

4       On October 25, 2013, Gutierrez sent an email to Cheeseman inquiring about his back pay

5 and bonus payments, and requesting clarification as to the rehire status reflected on his "UG100."

6 Gutierrez Decl. ¶ 19 & Ex. G.  In his response, Cheeseman stated, "your UG will reflect that you

7 are Eligible for rehire at United."  *Id.*

8       On October 29, a further RAP meeting was held.  *See* Iriye Motion Decl., Ex. D

9 (D000066) (letter summarizing February 18, 2014 RAP meeting and referencing previous RAP

10 meeting, on October 29, 2013).

11       On November 8, 2013 Gutierrez applied for a position as a Powerplant Technician.  Iriye

12 Motion Decl., Ex. A (Gutierrez Depo.) at 65; Gutierrez Decl. ¶ 21 & Ex. H (Application for

13 Powerplant Technician –San Francisco, CA (Technical Operations) (SFO00000559-SB)). The

14 starting salary for the position was $21.23 per hour.  Iriye Motion Decl., Ex. D (D01117) (job

15 description for Powerplant technician).   The job called for "[t]welve months documented

16 experience in powerplant heavy maintenance including components."  *Id.*  Gutierrez testified at his

17 deposition that he had never worked as a powerplant technician but that in his past work as a

18 mechanic he had done "light maintenance that relates to engine work."  Iriye Motion Decl., Ex. A

19 (Gutierrez Depo.) at 65.  In his application, he answered "yes" to the question "Do you have 12

20 months experience in Airframe and powerplant maintenance on powerplant components."

21 Gutierrez Decl., Ex. H (D000057).   The notations in Gutierrez's electronic file reflect that on

22 December 5, 2013 he was "Selected for interview."  Gutierrez Decl., Ex. H (D000048).  A

23 comment on the same date states, "Reviewed by [Hiring Manager] B. Constant and although skills

24 are not as strong, might consider for future openings."  *Id.*

25       Gutierrez emailed Cheeseman on November 10, 2013 to let him know he had applied for

26 the Powerplant Technician position and asked Cheeseman to manager in charge of hiring for the

27 position.  Gutierrez Decl. ¶ 22 & Ex. J.   Cheeseman responded, "I will work through this and let

28 you know something as soon as possible."  *Id.* ¶ 23 & Ex. K.   On November 19, 2013 Gutierrez

United States District Court
Northern District of California

sent an email to Cheeseman inquiring about the status of his application and then, when he did not receive a response, sent another email on December 23, 2013. *Id.* ¶¶ 25-26 & Exs. L, M. On December 23, 2013, Cheeseman responded to Gutierrez's inquiry, informing him that "Maintenance has elected not to fill the position at this time until they understand this new 'reasonable accommodation' process. I am working through this with Maintenance HR." *Id.*, Ex. M.

Gutierrez never received any official response from United on his application for the Powerplant Technician position. Gutierrez Decl. ¶ 21. According to Ana Maria Pena, "the hiring manager withdrew the position and no one was hired on the requisition." Pena Decl. ¶ 2. Pena further explained in her declaration that "United employees, in general, are not provided with notification of the fact that they have not been selected to fill particular positions, as this would be extremely burdensome given the number of positions and applications posted by United." *Id.* ¶ 3.

On January 12, 2014, Gutierrez applied for a position as a Line Technician. Gutierrez Decl. ¶ 28 & Exs. O, P (prescreening questions and application for Line Technician –San Francisco Ca (Technical Operations) (SFO00000364-SB)). According to United, this position required "[t]welve months experience . . .in trouble shooting, repair and maintenance of aluminum or composite skinned pressurized jet/turboprop aircraft." Iriye Motion Decl., Ex. D (D001118-19). Pena states that the salary was $21.73 an hour. Pena Decl. ¶ 3.

On February 18, 2014, another RAP meeting was held. Iriye Motion Decl., Ex. D (D0000066). One of the participants at the meetings was Anvhue Ly, a representative of the International Brotherhood of Teamsters ("IBT"), the union that represents mechanics (which is different from the union that represents ramp services employees). *Id.* Gutierrez asked Ly to explain the hiring process for mechanics, which is governed by a different collective bargaining agreement. *Id.* According to the letter summarizing that meeting, Ly told Gutierrez that:

> [T]he IBT CBA was governed by the terms of the Railroad Labor Act; which does not allow seniority to be bypassed or violated, as applied to filling a vacancy with the mechanic classification. The process for filling vacancies begins with clearing any local bids previously submitted, for an opening in that specific position, if no candidates from the local bid requests, they would refer to the system bid to fill the vacancy, exhausting any furlough recalls,

United States District Court
Northern District of California

> would be the last step prior to posting the vacancy to outside candidates. At this stage an employee seeking an accommodation, who meets the minimum qualifications for the job would be selected for placement; when determined they meet the minimal qualification.

*Id.*

Gutierrez testified at his deposition that at this meeting he also asked Ly about the two mechanic positions for which he had applied, to "see if they were filled . . . with in-house [mechanics]; and also, what's the status. Because we didn't know – I heard no response from United." Iriye Motion Decl., Ex. A (Gutierrez Depo.) at 164. Gutierrez further testified that Ly promised to "get back" to him about the positions, and also to contact the Maintenance department about other mechanic positions that might be available, but he did not do that. *Id.* at 171.

According to the letter summarizing the February 18 RAP meeting, Ly asked Gutierrez if he was interested in "other possible positions within the mechanic group, such as Stores or Supervisory position, should they become available." Iriye Motion Decl., Ex. D (D0000066). The letter from DeVere summarizing the meeting states, "[y]ou stated you were not currently interested in either of those positions at this time and were focused on securing a mechanics position." *Id.* At his deposition, Gutierrez testified that the summary of his position at that meeting was "not entirely accurate." Iriye Motion Decl., Ex. A (Gutierrez Depo.) at 165. He testified:

> What I said at the time that there's two job submissions I placed in for the mechanic position. I was still waiting word about those two status. And they haven't got back to me – I didn't – I never said I was not interested, I told them I need to know what is the status of those two submissions.

*Id.* The union representative who attended this meeting with Gutierrez, John Alexander, also states in his declaration that Gutierrez "did not reject the possibility of working in those positions but stated his preference for the machinists positions . . . ." Alexander Decl. ¶ 5.[11] DeVere testified at her deposition that the "Supervisory" position mentioned in her letter would have been

---

[11] United's objection to this testimony, *see* Reply at 2 n. 1, is overruled. Alexander states in his declaration that he attended this RAP meeting and therefore, his testimony about what occurred there is based on personal knowledge.

1    a promotion but that Gutierrez would not have been prohibited from applying for it.  Bacon Decl.,

2    Ex. C (DeVere Depo.) at 150.

3          On March 5, 2014, Gutierrez received an email from HR notifying him that the Line

4    Technician position for which he had applied in January had been cancelled. Gutierrez Decl. ¶ 33

5    & Ex. U;  *see also* Pena Decl. ¶ 3 (stating that the "requisition was cancelled in May 2014 and no

6    vacancy was filled on this requisition").[12]

7          On November 24, 2014, Gutierrez submitted an application for a mechanic's job, as an

8    avionics technician.  Gutierrez Decl. ¶ 35 & Ex. V (Application for Technician – Line (Avionics)

9    – San Francisco, CA (Technical Operations) (SFO00001477-SB)).   The position required

10   "[t]welve months experience . . . in radio and electrical/avionics trouble shooting and repair."

11   Iriye Motion Decl., Ex. D (D000192).  In his application, Gutierrez answered "No" to the question

12   "Do you have 12 months experience in all Aircraft systems radio and electrical/avionics trouble

13   shooting and repair." Gutierrez Decl., Ex. V (D001294).  The job paid $21.73 an hour.  Pena

14   Decl. ¶ 4.  According to Pena, United offered this position to "two applicants who were

15   minimally qualified for the position and could perform the essential functions of the job, including

16   having more than the requisite minimum 12 months' experience." *Id.*

17         On January 29, 2015, Gutierrez applied for another Line Technician position.  Gutierrez

18   Decl. ¶ 36 & Ex. W (Application for Technician – Line – San Francisco, CA (Technical

19   Operations) (SFO00001256-SB)).  Like the Line Technician job for which he had previously

20   applied, the position paid $21.73 an hour and required "[t]welve months experience . . .in trouble

21   shooting, repair and maintenance of aluminum or composite skinned pressurized jet/turboprop

22   aircraft."   Iriye Motion Decl., Ex. D (D001118-19); Pena Decl. ¶ 5.  According to Pena, the

23   position was not offered to Gutierrez; she states that it was offered to someone who was minimally

24   qualified for the job and had the required experience.  Pena Decl. ¶ 5. The print-out of Plaintiff's

25   online record for this position indicates that he answered "yes" to the question, "Do you have 12

26   months experience in trouble shooting, repair and maintenance of aluminum and/or composite

27

28   [12] It is not clear why Pena states in her declaration that the position was cancelled in May 2014,
     two months *after* Gutierrez  had received an email  telling him the position had been canceled.

United States District Court
Northern District of California

1    skinned pressurized jet/turboprop aircraft." Gutierrez Decl., Ex. W (D001285).  His resume listed

2    his experience as a mechanic with United as well as his experience with DHL, discussed above.

3    *Id*. (D001287).  The hiring manager for this position is listed as Colin Botto. *Id*.  Neither side has

4    offered any testimony from Botto regarding the reasons for his decision not to hire Gutierrez.[13]

5         On April 12, 2015, Gutierrez applied for a Base Technician position.  Gutierrez Decl. ¶ 37

6    & Ex. X (Application for Base Technician – San Francisco, CA (Technical Operations)

7    (SFO00001482-SB)).  The position paid $21.73 an hour.  Pena Decl. ¶ 6.  On the application,

8    Gutierrez answered "yes" to the question, "Do you have 12 months experience in trouble shooting,

9    repair and maintenance of aluminum and/or composite skinned pressurized jet/ turboprop

10   aircraft?" Gutierrez Decl., Ex. W (D001302).  As noted above, his resume listed his experience as

11   a mechanic at both United and DHL. The hiring manager is listed as Paul Darrow. *Id*.  Gutierrez

12   received a call from United in May 2015 scheduling him for a written test, practical test and face-

13   to-face interview, to occur on May 20, 2015.  *Id*.; Gutierrez Decl. ¶ 37.  According to Pena,

14   "[p]art of the job requirement was that interview candidates pass a 60-minute written exam and a

15   90-minute practical exam, as well as a structured interview."  Pena Decl. ¶ 6.  Pena states that on

16   May 18, 2015, Gutierrez called and cancelled the May 20 appointment and did not give a reason.

17   *Id*.  Gutierrez states in his declaration that he asked to reschedule the appointment because he had

18   "never seen a test requirement for an internal transfer at United and believed that was only for

19   outside personnel" and also was "caring for [his] mother at the time." Gutierrez Decl. ¶ 37;  *see*

20   *also* Iriye Motion Decl., Ex. D (D001638A) (email dated May 18, 2015 from Gutierrez to Pena

21   informing her that he would "like to postpone [his] Base Technician position test/interview

22   schedule on Wednesday May 20, 2015").  Pena states that Gutierrez has "never reached out to

23   [her] or . . . anyone else at United to reschedule the examination and interview."  Pena Decl. ¶ 6.

24   _____

25   [13] Pena states that Gutierrez did not have the required experience for this position and "[t]herefore,
     he was not selected for the position."  Pena Decl. ¶ 5.  There is nothing in Pena's Declaration that

26   suggests that she had any direct involvement in the hiring decision as to this position; nor has she
     provided any facts showing the basis for her statement.  The Court does not consider this

27   conclusory statement because it is impossible to determine whether it is based on personal
     knowledge.  Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a

28   motion must be made on personal knowledge, set out facts that would be admissible in evidence,
     and show that the affiant or declarant is competent to testify on the matters stated.").

United States District Court
Northern District of California

Similarly, Gutierrez states that he has "never heard back from United" about rescheduling. Gutierrez Decl. ¶ 37.  DeVere testified that at some point she sent Gutierrez a letter "telling him that he . . . could follow up with that to see if he can still take the test."  Iriye Motion Decl., Ex. C (DeVere Depo.) at 186.[14]  She also sent Gutierrez an email dated January 15, 2015 in which she stated, "Nelson, I see there is a security officer position posted in case you are interested.  Tish." *Id*, Ex. D (D001650).[15]

In discovery, United produced to Gutierrez a copy of his job application history. Gutierrez, Ex. A.  It includes the following comment, dated October 8, 2014:

> From: Hoonstra, Robin Sent Wednesday, October 08, 2014 2:01 PM To: Pena Anamaria CC: Nash, Sean; Cheeseman, Michael; DeVere, Patricia Subject RE: SFO00000364-SB[16] Importance: High Re: 155662 Nelson Gutierrez [SFOCG] – Candidate No. 3089626 Ana Maia Please remove the "N-Not Suitable for Rehire" designation in the Candidate Personal Information section of his Taleo profile. Also, he should have a RAP designation in the Candidate Personal Information section of his Taleo profile Thanks Robin . . .

Gutierrez Decl., Ex. A (D000002).  It is unclear when the "Not Suitable for Rehire" designation was placed in his profile or if it was ever removed.  Cheeseman testified that an "N" notation in an applicant's file would result in the application being "stopped."  Bacon Decl., Ex. A (Cheesman Depo.) at 51-52.[17]

---

[14] The actual letter does not appear to be in the record.

[15] United states in the Motion that DeVere testified Guiterrez did not respond to her January email, citing the DeVere deposition at 66-67.  No such testimony is contained in the pages United has cited (or anywhere else in the DeVere deposition).  In the cited pages, DeVere testified only that around January of 2015 she called Gutierrez about a security position at the maintenance base.

[16] This number matches the number on the Line Technician Application that Gutierrez submitted in January 2014.  See Gutierrez Decl., Ex. O.

[17] John Alexander states in his declaration that he has seen many "Not to be Rehired" notations on employee forms and that "in every case" it is "an effective termination."  Alexander Decl. pp 7. United objects to this testimony on the basis that it contains legal conclusions and lacks personal knowledge and foundation.  *See* Reply at 4 n. 5.  Because the "Not to be Rehired" notation speaks for itself, and because Cheeseman offered very similar testimony, the Court need not consider Alexander's testimony regarding the significance of the notation or rule on United's objection. Similarly, the Court declines to rule on United's objection to Alexander's testimony that he has participated in a least 10 different RAP meetings for disabled employees whose injuries prevented them from continuing to work a ramp services position, that all were invited to apply for open positions through the RAP process, and that not one was able to find a new position at United, because the Court does not rely on this testimony for the purposes of the instant motion.  *See* Alexander Decl. ¶ 8.

**B.    The Complaint**

In his complaint, Gutierrez asserts the following claims: 1) Disability Discrimination in violation of FEHA, California Government Code section 12940(a); 2)  Failure to Accommodate in violation of FEHA, California Government Code section 12940(m); 3) Failure to Engage in an Interactive Process in violation of FEHA, California Government Code section 12940(n); 4) Failure to Prevent Discrimination in violation of FEHA, California Government Code section 12940(k); 5) Retaliation in Violation of FEHA, California Government Code section 12940(h); and 6) Wrongful Termination in Violation of Public Policy.  Plaintiff seeks actual and punitive damages and attorneys' fees and costs.

**C.    The Summary Judgment Motion**

United seeks summary judgment on all of Plaintiff's claims as well as his request for punitive damages.  With respect to his Disability Discrimination claim (Claim One), United contends two of the three required elements for making a prima facie case of discrimination are not met.  Motion at 14-15 (citing *Brundage v. Han*, 57 Cal. App. 4th 228 (1997);  *Faust v. California Portland Cement Co.*, 150 Cal. App. 4th 864, 886 (2007)). In particular, it argues that Gutierrez, as a matter of law, was not qualified to perform the essential functions of his former ramp services position or any of the mechanic's positions for which he applied; and that he suffered no adverse employment action because United gave him the opportunity to work in the bag room on light duty and also expressed willingness to reassign Gutierrez to another position for which he was qualified.[18]  *Id*. at 15-16.  United further asserts that even if Gutierrez has made out a prima facie case of discrimination, United has articulated a legitimate, non-discriminatory reason for its actions, namely, that Gutierrez was not qualified for the positions he applied for, and Gutierrez has not pointed to any evidence that this reason is pretextual. *Id*. at 17-18.

United asserts that it is entitled to summary judgment on Plaintiff's Failure to Provide Reasonable Accommodations claim (Claim Two) because it is undisputed that Gutierrez is not qualified to perform the essential functions of his ramp services position and also because United

---

[18] United does not dispute that the first element of the three-part test, that the plaintiff must be disabled or perceived as disabled, is met.

United States District Court
Northern District of California

has "accommodated" him by providing him with over six years of extended leave of absence. *Id.* at 18. Further, United asserts, the law does not require it to promote Gutierrez, create a new position for him or violate another employee's rights under a collective bargaining agreement in order to offer a reasonable accommodation. *Id.* at 18-19 (citing *Spitzer v. The Good Guys, Inc.,* 80 Cal. App. 4th 1376, 1389 (2000); *Furtado v. State Personnel Board*, 212 Cal. App. 4th 729, 745 (2013); *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 377 (2015)).

United seeks summary judgment on Plaintiff's claim for Failure to Engage in the Interactive Process (Claim Three) on the basis that it is allegedly undisputed that Gutierrez did not respond to United's letters or seek an accommodation until November 2013 and then when he did request accommodation, United set up a team to assist him. Motion at 19-20. Further, United asserts, the claim fails because the process eventually broke down as a result of Gutierrez's failure to respond to DeVere's letter in January 2015 following up as to the security position. Motion at 20. United also asserts the claim fails because it continues to engage in a good-faith interactive process but Gutierrez refuses to participate in the process. *Id.*

United argues that Claim Four, Failure to Prevent Discrimination, also fails as a matter of law because such a claim requires a showing that there was, in fact, discrimination. *Id.* Because Plaintiff fails to make a prima facie case of discrimination, United asserts, its claim for Failure to Prevent Discrimination also fails. *Id.* at 20-21. In addition, United argues it "has anti-discrimination and anti-retaliation policies and provides training to its managers and Human Resources professionals regarding these policies." *Id.* at 21. There is no evidence, United contends, that it failed to take steps to prevent discrimination. *Id.*

United also challenges Plaintiff's claim for Retaliation, Claim Five. United does not dispute that Plaintiff has adequately demonstrated that he engaged in protected activity, namely, seeking accommodation for his disability. Motion at 21. It argues that the other two required elements to make a prima facie case of retaliation are not satisfied, however. *Id.* at 21-22. In particular, it argues that there is no evidence of any adverse employment action or of a causal link between United's actions and Gutierrez's disability. *Id.* To the extent Gutierrez relies on United's refusal to return him to work in a mechanic's position, that does not establish a causal connection,

United States District Court
Northern District of California

1    United asserts, pointing to its willingness to "assign Gutierrez into internally-posted positions for

2    which he is minimally qualified and applies." *Id*. at 22 (citing Allain Decl. ¶ 3).

3          United argues that it is entitled to summary judgment on Gutierrez's Wrongful

4    Termination claim, Claim Six, because Gutierrez has not, in fact, been terminated, and Gutierrez

5    has not resigned. *Id*. at 22-23 (citing *Motavelli v. Los Angeles Unitifed School Dist.*, 122 Cal.

6    App. 4th 97, 114 (2004)).

7          Finally, United argues that it is entitled to summary judgment on Plaintiff's request for

8    punitive damages because he cannot show by "clear and convincing evidence" that United is

9    guilty of "fraud, oppression or malice." *Id*. at 23 (citing Cal. Civ. Code § 3294(a)).  In particular,

10   United asserts, none of the relevant conduct was performed by an "officer, director or managing

11   agent" of the corporation and no "officer, director or managing agent" of the corporation" either

12   ratified the conduct at issue or hired the individuals who engaged in the alleged conduct knowing

13   that those individuals were unfit and with "conscious disregard of the rights or safety of others."

14   *Id*. (citing Cal. Civ. Code § 3294(h)).

15   **III.    ANALYSIS**

16        **A.    Rule 56 of the Federal Rules of Civil Procedure**

17         Summary judgment on a claim or defense is appropriate "if the movant shows that there is

18   no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

19   law." Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show

20   the absence of a genuine issue of material fact with respect to an essential element of the non-

21   moving party's claim, or to a defense on which the non-moving party will bear the burden of

22   persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has

23   made this showing, the burden then shifts to the party opposing summary judgment to designate

24   "specific facts showing there is a genuine issue for trial." *Id*.  On summary judgment, the court

25   draws all reasonable factual inferences in favor of the non-movant. *Scott v. Harris*, 550 U.S. 372,

26   378 (2007).

27

28

19

United States District Court
Northern District of California

**B.      Disability Discrimination (Claim One)**

### 1.  Legal Standard

California's Fair Employment and Housing Act (FEHA) makes it unlawful to discriminate against a person "in compensation or in terms, conditions, or privileges of employment" on the basis of, among other things, physical disability and medical condition. Cal. Gov.'t Code § 12940(a).  There are two types of disability discrimination under FEHA: "(1) discrimination arising from an employer's intentionally discriminatory act against an employee because of his or her disability (referred to as disparate treatment discrimination), and (2) discrimination resulting from an employer's facially neutral practice or policy that has a disproportionate effect on employees suffering from a disability (referred to as disparate impact discrimination)." *Avila v. Cont'l Airlines, Inc*., 165 Cal. App. 4th 1237, 1246 (2008), as modified on denial of reh'g (Aug. 28, 2008).  Plaintiff stipulated at oral argument that he is asserting only a disparate treatment discrimination claim.

     In the absence of  "direct evidence" of discrimination, California courts analyze disparate treatment disability discrimination claims under the three-stage burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 807 (1973). *Guz v. Bechtel Na'l, Inc*., 24 Cal.4th 317, 354–55; *Bradley v. Harcourt, Brace & Co*., 104 F.3d 267, 270 (9th Cir.1996).  Under the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case of discrimination.  *Hawn v. Exec. Jet Mgmt, Inc*., 615 F.3d 1151, 1155 (9th Cir.2010)).  The elements of a prima facie case of disability discrimination in violation of FEHA are: (1) the plaintiff is disabled; (2) the plaintiff can, with or without reasonable accommodation, perform the essential functions of his position; and (3) the defendant subjected the plaintiff to an adverse employment action because of the disability.  *Brundage v. Hahn*, 57 Cal. App. 4th 228, 236 (1997).  If the plaintiff establishes a prima facie case, the burden of production, but not persuasion, shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged actions. *Hawn v. Exec. Jet Mgmt, Inc*., 615 F.3d at 1155.   If this burden is met, the plaintiff "must then raise a triable issue of material fact as to whether the defendant's proffered reasons for [the challenged conduct] are mere pretext for unlawful discrimination." *Id.*

### 2. Discussion

United contends Gutierrez has failed to make a prima facie case of discrimination because the undisputed facts establish that he was not qualified for the mechanic's positions for which he applied and he was not subject to an adverse employment action. It further contends summary judgment on this claim is appropriate because it has articulated a legitimate, non-discriminatory reason for rejecting Plaintiff's applications for mechanic's positions and there is no evidence of pretext. The Court finds that there are fact issues as to whether Gutierrez can perform the essential functions of at least some of the mechanic's positions for which he applied[19] and whether he has been subjected to an adverse employment action. It further finds that there is evidence sufficient to demonstrate that the legitimate non-discriminatory reason offered by United may be pretextual. Therefore, United is not entitled to summary judgment on Plaintiff's disability discrimination claim.

### a. Prima Facie Case

#### i. Whether Gutierrez Can Perform the Essential Functions of a Mechanic's Job

United asks the Court to hold, as a matter of law, that Gutierrez was not qualified to perform the essential functions of the mechanic's positions for which he applied. The facts, however, are disputed on this question. While Gutierrez conceded that he did not have the required "[t]welve months experience . . . in radio and electrical/avionics trouble shooting and repair" for the Avionics Technician position, *see* Gutierrez Decl., Ex. V (D001294), he stated on his applications for the Line Technician positions that he *did* have the required 12 months experience in "trouble shooting, repair and maintenance of aluminum and/or composite skinned pressurized jet/turboprop aircraft." Gutierrez Decl., Ex. W (D001285). Further, his resume listed his experience as an aircraft mechanic with United (3/2000 -9/2000) as well as his experience as a Plane Tech in Line Maintenance with DHL (1/1999-3/2000), discussed above. *Id*. (D001287). United does not address this evidence at all in its Motion, stating only that Gutierrez was unqualified because "his last experience in this area was for 7 months 14 years before." Motion at

---

[19] It is undisputed that Plaintiff is unable to perform the essential functions of the ramp services position in light of his injuries.

United States District Court
Northern District of California

10.  Similarly, United ignores the evidence from which a jury could reasonably infer that Gutierrez was qualified for the Powerplant Technician job.  For this job, like the Line Technician position, Gutierrez checked the "yes" box for the required 12 months experience.

On top of this evidence, it is also undisputed that Gutierrez had *already* been transferred to a position at United working as a mechanic, supporting an inference that his past experience, including his experience at DHL, qualified him to work in *some* capacity as a mechanic at United. Although United makes much of the fact that Gutierrez did not complete the probationary period, it has offered no evidence regarding the reason Gutierrez was transferred back to ramp services before the period ended.  Further, even assuming the reason was related to his performance, Gutierrez's failure to complete his probationary period does not alter the fact that he was permitted to hold the mechanic position in the first place, supporting the inference that he had the minimum qualifications for that position.

In short, there is sufficient evidence to demonstrate a material dispute of fact as to whether Gutierrez could perform the essential functions of at least some of the mechanic's jobs for which he applied.

        ii.  Whether Gutierrez Was Subjected to an Adverse Employment Action

United contends there has been no adverse employment action because all of Guterriez's applications have been "unsuccessful" for legitimate non-discriminatory reasons. The Court rejects United's argument.

As a preliminary matter, the Court notes that United's arguments appear to confuse the requirements of a prima facie case with the inquiry at steps two and three of the *McDonnell Douglas* burden-shifting framework, which addresses whether the plaintiff can point to evidence of pretext in the face of the legitimate non-discriminatory reason articulated by the defendant for the challenged conduct.  At the prima facie case stage of the inquiry, the Court's task is simply to determine whether the challenged conduct implicates the "terms, conditions, or privileges of employment."  Cal. Gov't Code § 12940(a).  The California Supreme Court has explained that this language is to be "interpreted broadly to further the fundamental antidiscrimination purposes of the FEHA" and that "[a]ppropriately viewed, [section 12940(a)] protects an employee against

United States District Court
Northern District of California

United States District Court
Northern District of California

1   unlawful discrimination with respect not only to so-called 'ultimate employment actions' such as

2   termination or demotion, but also the entire spectrum of employment actions that are reasonably

3   likely to adversely and materially affect an employee's job performance or opportunity for

4   advancement in his or her career." *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1053-54

5   (2005).   This is an "inherently fact specific" inquiry and "the determination of whether a

6   particular action or course of conduct rises to the level of actionable conduct should take into

7   account the unique circumstances of the affected employee as well as the workplace context of the

8   claim." *Id*. at 1052.   Consequently, the question of whether an employee has been subjected to an

9   adverse employment action often is not appropriate for determination on summary judgment and it

10  is not appropriate here.

11          Further, assuming that the mechanic's positions for which Gutierrez applied would have

12  been promotions, as United contends, California courts have found that "eliminat[ion] of a

13  reasonable potential for promotion" may be an adverse employment action.   *Akers v. Cty. of San*

14  *Diego*, 95 Cal. App. 4th 1441, 1455 (2002);   *see also  Helgeson v. Am. Int'l Grp., Inc*., 44 F. Supp.

15  2d 1091, 1098 (S.D. Cal. 1999) (recognizing that "the denial of a deserved promotion" may be an

16  adverse employment action under FEHA.   To the extent United contends Gutierrez's failure to

17  secure a mechanic's position was not unreasonable because he did not possess the minimum

18  qualifications for the job, that is a disputed issue of fact, as discussed above.   Drawing all

19  reasonable inferences in favor of Gutierrez, as the Court is required to do on summary judgment,

20  United's failure to place Gutierrez in any of the mechanic's positions for which he applied could

21  constitute the denial of a deserved promotion and therefore, an adverse employment action.

22                  b.   Pretext

23          A plaintiff may show pretext either "(1) by showing that unlawful discrimination more

24  likely motivated the employer, or (2) by showing that the employer's proffered explanation is

25  unworthy of credence because it is inconsistent or otherwise not believable." *Dominguez–Curry v.*

26  *Nevada Transp. Dept*., 424 F.3d 1027, 1037 (9th Cir. 2005) (citing *Godwin v. Hunt Wesson, Inc*.,

27  150 F.3d 1217, 1220–22 (9th Cir.1998));   *see also Guz v. Bechtel Nat. Inc*., 24 Cal. 4th 317, 363

28  (2000) ("in an appropriate case, an inference of dissembling may arise where the employer has

1  given shifting, contradictory, implausible, uninformed, or factually baseless justifications for its

2  actions").  On the other hand, an employer's non-discriminatory reason is not rebutted where "the

3  employee simply show[s] the employer's decision was wrong, mistaken, or unwise." *Horn v.*

4  *Cushman & Wakefield Western, Inc.*, 72 Cal.App. 4th 798, 807(1999).

5       To establish pretext under step three, very little direct evidence of discriminatory motive is

6  required, but if circumstantial evidence is offered, such evidence must be "specific" and

7  "substantial." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d at 1222; *Cornwell v. Electra Cent. Credit*

8  *Union*, 439 F.3d 1018, 1028 n. 6 (9th Cir.2006) (merely denying the credibility of defendant's

9  proffered reason for the challenged employment action or relying solely on plaintiff's subjective

10  beliefs that the action was unnecessary are insufficient to show pretext).  To survive summary

11  judgment, however, a plaintiff asserting a claim for discrimination is not required to offer "*further*

12  evidence that the true reason was discriminatory."  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 360

13  (2000) (emphasis in original).  Rather, a "plaintiff's showing of pretext, *combined* with sufficient

14  prima facie evidence of an act motivated by discrimination, may permit a finding of

15  discriminatory intent, and may thus preclude judgment as a matter of law for the employer."  *Id.*

16  (emphasis in original); *see also Strother v. S. California Permanente Med. Grp.*, 79 F.3d 859, 870

17  (9th Cir. 1996), as amended on denial of reh'g (Apr. 22, 1996), as amended on denial of reh'g

18  (June 3, 1996)("The same evidence can be used to establish a prima facie case and to create a

19  genuine issue regarding whether the employer's explanations are pretextual").

20       There is specific and substantial evidence in the record that the reason United now offers

21  for its failure to place Gutierrez in a mechanic's position – that he was not qualified for those

22  positions –  is not worthy of credence.   As discussed above, there is evidence from which a

23  reasonable inference could be drawn that Gutierrez was qualified for several of the mechanic's

24  jobs for which he applied, including the experience listed on his online resume and applications

25  reflecting that his combined experience working as a mechanic for DHL and United exceeded 12

26  months and the fact that United had previously placed Gutierrez in a mechanic's position.  These

27  facts are undisputed.

28       Additional evidence of pretext is the undisputed fact that no one involved in the RAP

United States District Court
Northern District of California

United States District Court
Northern District of California

1    process, which was (according to United) specifically designed to help employees identify

2    appropriate positions in light of their physical limitations, ever told Gutierrez that he was not

3    qualified for the mechanic's jobs for which he was applying. To the contrary, it is undisputed that

4    DeVere and Cheeseman gave Gutierrez the opportunity to update his limitations to show that he

5    could perform the physical requirements of a mechanic's position and arranged for a meeting with

6    the relevant union representative to explain the hiring process for those positions under the

7    relevant collective bargaining agreement.

8         United also presents no evidence that Gutierrez's performance when he worked as a

9    mechanic for United in 2000 was unsatisfactory, or that any decision-maker who decided not to

10   hire Gutierrez for the mechanic's positions for which he has applied in the last two years was

11   aware of his past performance.  Indeed, United has offered no testimony by any decision-maker

12   involved in the decisions not to place Gutierrez in positions for which he applied, much less

13   testimony that any of those individuals found that  Gutierrez was not qualified for the mechanic's

14   positions.  Moreover, a notation in Gutierrez's electronic file reflects that on December 5, 2013 he

15   was "Selected for interview" and a comment by the hiring manager states, that "although skills are

16   not as strong, might consider for future openings."  Gutierrez Decl., Ex. H (D000048).  Drawing

17   all reasonable inferences in Gutierrez's favor, this evidence could support a reasonable inference

18   that the hiring manager concluded that Gutierrez met the minimum qualifications for the position

19   and that United's assertion that Gutierrez was not hired for any of the positions for which he

20   applied because he did not have the minimum qualifications for them is pretextual.

21         Finally, there is evidence in the record that during the time period when Gutierrez was

22   applying for a number of the mechanic's positions for which he may have been qualified

23   (including the Line and Powerplant Technician positions), his online profile was flagged with a

24   "Not Suitable for Rehire" designation *and* did not carry a RAP designation, as it apparently should

25   have.  *See* Gutierrez Decl., Ex. A (D000002).  United asks the Court to disregard this evidence

26   because it is unclear when the "Not Suitable for Rehire" flag was placed in Gutierrez's record.

27   Even without that information, however, a jury could reasonably conclude from this evidence that

28   United's failure to offer Gutierrez any of the positions for which he applied in the year prior to the

United States District Court
Northern District of California

comment was a result of this designation and not because he was not qualified for the positions. The Court also notes as to the missing RAP designation that there is at least some evidence that the RAP designation would have entitled him to receive preference in some hiring contexts. *See* Bacon Decl., Ex. A (Cheeseman Depo.) at 48.

The Court also rejects United's reliance on the fact that two of the positions for which Gutierrez applied were cancelled after Gutierrez applied for those positions.  It is United's position that there can be no discriminatory intent as to positions that were cancelled.  The Court disagrees. There is no evidence in the record as to why these positions were canceled or even who made the decision to cancel them.  As discussed above, the individuals who made those decisions were not disclosed by United. There is, however, evidence that the hiring process for at least one position, the Powerplant Technician position, was temporarily delayed before it was ultimately canceled specifically because the HR department handling the hiring for that position did not understand the requirements of the RAP process.  *See* Gutierrez Decl., Ex. M (Cheeseman email stating that "Maintenance has elected not to fill the position at this time until they understand this new 'reasonable accommodation' process").   In light of this evidence, a jury could infer that the cancellation of at least the Powerplant Technician position was itself motivated by discriminatory intent.  Therefore, the Court finds that the fact that some of the positions for which Gutierrez applied were canceled is not a sufficient basis to conclude, as a matter of law, that United's failure to hire Gutierrez for these positions could not have been discriminatory.

Accordingly, the Court finds that Gutierrez's Disability Discrimination claim survives United's request for summary judgment.

## C.     Failure to Accommodate (Claim Two)

United asserts that it is entitled to summary judgment on Gutierrez's Failure to Accommodate claim because Gutierrez is not "automatically entitled to a promotion" and United has already offered him a reasonable accommodation by allowing Gutierrez to remain on extended unpaid leave for six years.  Motion at 18. The Court rejects United's assertions.

In *Jensen v. Wells Fargo*, the court explained that "the employer cannot prevail on summary judgment on a claim of failure to reasonably accommodate unless it establishes through

undisputed facts that (1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." 85 Cal. App. 4th 245, 263 (2000). As to all three theories, there are disputed facts in this case.

First, United cites *Jensen* in support of its assertion that it offered a reasonable accommodation, as a matter of law, by allowing Gutierrez to remain on unpaid leave for six years. Motion at 18. *Jensen* does not support United's conclusion and in fact, supports the opposite conclusion. In *Jensen*, the court acknowledged that "[h]olding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation and may be all that is required where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future." 85 Cal. App. 4th at 263. The court in that case went on, however, to hold that the employer was *not* entitled to summary judgment on the plaintiff's reasonable accommodation claim on the basis that the employer had offered unpaid leave to the plaintiff because it was "undisputed . . . that both parties understood early on that Jensen was unlikely ever to be able to return to" her former job. *Id*. That is the case here as well. Consequently, the unpaid leave that has been afforded to Gutierrez does not entitle United to summary judgment on his Failure to Accommodate claim.

There are also disputed facts as to the third ground for summary judgment, that is, that the employer did "everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." 85 Cal. App. 4th at 263.[20] United contends Gutierrez failed to respond to an email from DeVere and argues that this is evidence that the process has broken down as a result of Gutierrez's failure to engage in discussions in good faith. Motion at 20. The testimony it cites by

---

[20] United does not contend that it is entitled to summary judgment on the second ground, that there is no position at United that Plaintiff could perform with or without reasonable accommodation.

United States District Court
Northern District of California

1   DeVere, however, does not address whether Gutierrez responded and in any event, the email itself

2   did not require (or even invite) a response.  *See* Iriye Motion Decl., Ex. C (DeVere Depo.) at 66-

3   67 (cited by United in support of representation that Gutierrez did not respond to DeVere's email)

4   & Ex. D (D001650) (email).  Nor can the Court conclude, as a matter of law, that Gutierrez's

5   failure to take the test for the Base Technician position is a reflection that he was no longer

6   engaging in discussion in good faith, given that he contacted Pena in advance of the test and asked

7   to "postpone" (rather than "cancel") the test.  *See* Iriye Motion Decl., Ex. D (D001638A).  Further,

8   his testimony suggests he did not reschedule the test because he was waiting for Pena to contact

9   him to reschedule and not because there was any failure on his part to engage in the interactive

10  process in good faith.   Gutierrez Decl. ¶ 37.  In sum, United is not entitled to summary judgment

11  on this ground.

12          Therefore, while United's assertion that FEHA does not require it to promote a disabled

13  employee is an accurate statement of the law, *see Spitzer v. The Good Guys, Inc.*, 80 Cal. App. 4th

14  1376, 1389 (2000), it has nonetheless failed to demonstrate that it is entitled to summary judgment

15  on Gutierrez's claim for Failure to Accommodate.

16      **D.    Failure to Engage in an Interactive Process (Claim Three)**

17          Section 12940(n) makes it unlawful "[f]or an employer  . . . to fail to engage in a timely,

18  good faith, interactive process with the employee or applicant to determine effective reasonable

19  accommodations, if any, in response to a request for reasonable accommodation by an employee

20  or applicant with a known physical or mental disability or known medical condition." Cal. Gov't

21  Code § 12940.  In *Scotch v. Art Institute of California*, the court explained that this provision

22  offers "the appropriate cause of action where the employee is unable to identify a specific,

23  available reasonable accommodation while in the workplace and the employer fails to engage in a

24  good faith interactive process to help identify one, but the employee is able to identify a specific,

25  available reasonable accommodation through the litigation process." 173 Cal. App. 4th 986, 1018-

26  19 (2009) (quotations and citations omitted).   Thus, to prevail on such claim, a plaintiff must

27  establish that there was a position that would have been a reasonable accommodation had the

28  employer negotiated in good faith.  *Id.*

As discussed above, Plaintiff has offered sufficient evidence to demonstrate a material dispute of fact as to whether he could perform at least some of the positions for which he applied at United.  Thus, the requirement that a plaintiff must point to a specific accommodation to prevail on a claim under section 12940(n), articulated in *Scotch*, does not provide a basis to grant summary judgment in United's favor.  Further, United's assertion that the "undisputed facts" demonstrate, as a matter of law, that it engaged in the interactive process in good faith, *see* Motion at 19, has no merit because the facts United lists are far from being undisputed.  United's assertion that it "offered to meet with Gutierrez to discuss possible reasonable accommodations before 2013, to no avail" and that Gutierrez "waited until April 2013 – over four years after he was first injured – to respond to United's numerous letters to him regarding requesting any sort of reasonable accommodation," is in dispute.[21]  United's assertion that Gutierrez "sought no accommodation" and did not apply "for any position at United in the time period between when he first went on leave in 2009 and November 2013," is in dispute.[22]  United's assertion that Gutierrez declined United's efforts to place him in an appropriate position as a security guard or in a supervisory or store position, is in dispute.[23]  And, as discussed above, United's assertion that Gutierrez's alleged failure to respond to DeVere's letter in 2015 amounted to a break-down in the interactive process is not supported by any evidence.

United has not demonstrated that it is entitled to summary judgment on Plaintiff's Failure to Engage in Interactive Process Claim.

---

[21] *See* Iriye Motion Decl., Ex. A (Gutierrez Depo.) at 130, 137 (testifying that he called the Employee Service Center in early 2010 and then again later in 2010 in response to letters from United asking to initiate RAP process);   Gutierrez Decl. ¶¶ 11, 13 (stating that he called the Employee Service Center in early 2010 and left his name, file number, department and station where he worked, and that he called both Aday and the Employee Service Center again, several months later, when he had not heard back).

[22] *See*  Gutierrez Decl. ¶¶ 11-12 (stating that Gutierrez told Aday he was interested in an accommodation as a mechanic and Aday told Gutierrez he would pass this information on to United's management);  Gutierrez Decl., Ex. B (D000071) (online record with creation date of February 9, 2010 containing "cover letter" stating that Gutierrez was "interested in the Aircraft mechanic, Tech opps, position posted on United Airlines Flying together, Skynet, under carrier services and opportunity").

[23] *See* Iriye Motion Decl., Ex. A (Gutierrez Depo.) at 165 (testifying that when the possibility of a supervisory or store position was raised, Gutierrez responded he did not want to pursue those options until he heard back about the two mechanic's positions for which he had applied).

United States District Court
Northern District of California

1

### E.    Failure to Prevent Discrimination (Claim Four)

2      FEHA makes it unlawful for an employer "to fail to take all reasonable steps necessary to

3   prevent discrimination and harassment from occurring." California Government Code section

4   12940(k).  California courts have held that in order to prevail on a claim under this section a

5   plaintiff must establish that the employer actually engaged in discriminatory conduct. *See Trujillo*

6   *v. N. County Trans. Dist.*, 63 Cal.App.4th 280, 289 (1998) ("Employers should not be held liable

7   to employees for failure to take necessary steps to prevent such conduct, except where the actions

8   took place and were not prevented.").  United thus contends it is entitled to summary judgment on

9   this claim for the same reasons it is entitled to summary judgment on Gutierrez's Disability

10  Discrimination claim.  Having found that there are fact questions as to the Disability

11  Discrimination claim, this argument fails as well.

12      Nor has United demonstrated by undisputed facts that its anti-discrimination policy

13  satisfies the requirements of section 12940(k).  United has presented evidence that it *has* policies

14  to prevent discrimination and retaliation;  Allain states as much in her declaration.  *See* Allain

15  Decl. ¶ 4.  It has not pointed to any case, however, that supports the conclusion that merely having

16  an antidiscrimination policy is sufficient to meet the requirements of section 12940(k) that it take

17  "all reasonable steps necessary to prevent discrimination."  In the single case United cites in

18  support of this argument, *California Fair Employment and Housing Commission v. Gemini*

19  *Aluminum Corp.*, 122 Cal. App. 4th 1004, 1025 (2004), the court held that the employer had *not*

20  taken all reasonable steps necessary to prevent discrimination.  While it noted that "reasonable

21  steps an employer might take include the establishment and promulgation of antidiscrimination

22  policies and the implementation of effective procedures to handle complaints and grievances

23  regarding discrimination," *id.*, the court nowhere held that an employer who had such a policy in

24  place would satisfy the requirements of section 12940(k) as a matter of law.

25      United is not entitled to summary judgment on Plaintiff's claim for Failure to Prevent

26  Discrimination.

27

### F.    Retaliation (Claim Five)

28      "To assert a prima facie retaliation claim under FEHA, 'the plaintiff must show that he

30

1    engaged in a protected activity, his employer subjected him to adverse employment action, and

2    there is a causal link between the protected activity and the employer's action.'" *Strother v. S.*

3    *California Permanente Med. Grp*., 79 F.3d 859, 868 (9th Cir. 1996), as amended on denial of

4    reh'g (Apr. 22, 1996), as amended on denial of reh'g (June 3, 1996) (quoting *Flait v. North*

5    *American Watch Corp*., 3 Cal.App.4th 467, 476 (1992)). Once a prima facie case has been

6    established, the burden shifts to the employer to present legitimate reasons for the adverse

7    employment action. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir.2000). If the

8    employer does so, the burden shifts back to plaintiff to demonstrate a genuine issue of material

9    fact as to whether the reason advanced by the employer was a pretext. *Id*. (citing *Flait*, 3

10   Cal.App.4th at 476).

11        It is undisputed that Plaintiff requested an accommodation.  Further, Plaintiff has pointed

12   to evidence from which a jury could reasonably infer that he was qualified for several of the

13   mechanic's positions for which he applied.  Therefore, as discussed above, he has demonstrated

14   that there is a material dispute of fact as to whether he was subject to an adverse employment

15   action.  Moreover, Plaintiff has pointed to evidence that the reason offered by United for failing to

16   place Gutierrez in a mechanic's position was pretextual.  Therefore United is not entitled to

17   summary judgment on Plaintiff's Retaliation claim.

18        **G.    Wrongful Termination in Violation of Public Policy (Claim Six)**

19        To prevail on a claim for wrongful discharge in violation of public policy, a plaintiff must

20   establish "(1) a termination or other adverse employment action; (2) the termination or other

21   action was a violation of a fundamental public policy, as expressed in a constitutional, statutory, or

22   regulatory provision; and (3) a nexus between the adverse action and the employee's protected

23   status or activity." *Rope v. Auto-Chlor Sys. of Washington, Inc*., 220 Cal. App. 4th 635, 660

24   (2013) (citing *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1042 (2005)); *see also Tameny v.*

25   *Atl. Richfield Co.*, 27 Cal. 3d 167, 178 (1980)).  California courts have held that "FEHA's policy

26   prohibiting disability discrimination in employment is sufficiently substantial and fundamental to

27   support a claim for wrongful termination in violation of public policy."  *Id*. (citations omitted).

28        United challenges Plaintiff's *Tameny* claim on the basis that Gutierrez has not been

31

terminated and has not resigned, citing a single case, *Movatelli v. Los Angeles Unified School District*, 122 Cal. App. 4th 97, 114 (2004). *Movatelli* is not on point.  In that case, the plaintiff attempted to bring a *Tameny* claim based on her employer's refusal to renew her contract; the court held that "mere nonrenewal" of an employment contract that had expired on its own terms was not sufficient to meet the first requirement of a *Tameny* claim that the plaintiff establish "a termination or other adverse employment action."  122 Cal. App. 4th at 113.  The court recognized, however, "that adverse employment action short of a termination may give rise to a *Tameny* claim." *Id.* at 112.

Here, there is evidence sufficient to preclude summary judgment from which a jury could reasonably infer Gutierrez has been subjected to an adverse employment action, as discussed above.   Thus, the Court need not reach the question of whether Plaintiff can establish that his treatment by United constituted a constructive discharge.

## H.    Request for Punitive Damages

California Civil Code section 3294(a) provides that "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice," the plaintiff may recover punitive damages.   "Malice" is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1).   "Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."   Cal. Civ. Code § 3294(c)(2).   "Fraud" is defined as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."   Cal. Civ. Code § 3294(c)(3).

Section 3294 further provides:

> An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for

which the damages are awarded or was personally guilty of oppression, fraud, or malice. *With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.*

Cal. Civ. Code section 3294(b) (emphasis added). The California Supreme Court has held that a "managing agent" of a corporation "include[s] only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 566-67 (1999).

Gutierrez contends punitive damages may be awarded against United on the basis of the conduct of the participants in the RAP process, who "knew virtually nothing about how to implement the RAP 'policy' which is clear evidence that United had no interest in actually providing an accommodation (i.e. a job) to its disabled employees." Opposition at 18. United has offered the Allain Declaration to establish that none of the United employees who participated in the RAP process, that is, DeVere, Cheeseman and Ly, had any discretion with respect to making or modifying corporate policy. Allain Decl. ¶¶ 6-8. Gutierrez counters that punitive damages may be awarded on the basis that United ratified the conduct of these individuals, but he has not explained how this ratification occurred, or pointed to any specific evidence of ratification. Therefore, the Court rejects that argument.

Alternatively, Gutierrez contends United may be held liable for punitive damages based on the theory that the actual policy followed by United, which requires disabled employees to compete with nondisabled employees, is oppressive, fraudulent and malicious and therefore, to the extent the employees who were involved in the accommodation process were carrying out that policy, their conduct can provide a basis for imposing punitive damages under Section 3294(a). California courts have found that "[w]here the employee follows the company's 'usual procedures,' the employee's acts may be considered part of employer policy" and therefore, that "[c]ustomary practice may be considered to have been known or authorized by those who dictate the policies of the corporation." *In re Related Asbestos Cases*, 566 F. Supp. 818, 825 (N.D. Cal. 1983) (quoting *Hale v. Farmers Ins. Exch.*, 42 Cal. App. 3d 681, 696 (1974) disapproved of on

1    other grounds by *Egan v. Mut. of Omaha Ins. Co*., 24 Cal. 3d 809 (1979) (citing *Schanafelt v.*

2    *Seaboard Finance Co*.,108 Cal.App.2d 420 (1951) (holding that punitive damages were proper

3    where employee testified that "all that he did was in the usual performance of his duties and was

4    expressly authorized by his employer")).  The Court finds no authority, however, suggesting that a

5    facially neutral policy requiring disabled employees to compete with nondisabled employees for

6    open positions is the sort of conduct that would be sufficient to reflect malice, oppression or fraud

7    such that punitive damages would be available under California law.  *See Golez v. Kerry, Inc*., No.

8    C 07-05984 SI, 2009 WL 192592, at *2 (N.D. Cal. Jan. 27, 2009) (granting summary judgment on

9    punitive damages claim based, in part, on conclusion that "a policy that machine mechanics could

10   not return to work unless a doctor determined that no work restrictions were necessary" did not

11   "amount to 'despicable conduct that subjects a person to cruel and unjust hardship in conscious

12   disregard of that person's rights' or 'conduct which is intended by the defendant to cause injury to

13   the plaintiff or despicable conduct which is carried on by the defendant with a willful and

14   conscious disregard of the rights or safety of others.'")).  Therefore, the Court concludes that

15   United is entitled to summary judgment on Plaintiff's claim for punitive damages.

16   **IV.    CONCLUSION**

17          For the reasons stated above, the Motion is GRANTED as to Plaintiff's claim for punitive

18   damages.  In all other respects, the Motion is DENIED.[24]

19          **IT IS SO ORDERED.**

20

21   Dated: February 16, 2016

22                                                            _____

23                                                            JOSEPH C. SPERO
                                                             Chief Magistrate Judge
24

25

26

27   _____

28   [24] Because the Court finds that there is sufficient evidence to defeat United's Motion as to all of
     Plaintiff's underlying claims, it need not address Plaintiff's request that the Court defer ruling on
     the Motion under Rule 56(d) and permit him to conduct additional discovery.

United States District Court
Northern District of California